# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| ROY & GABEL PLLC, BRANDON ROY, and CHRISTOPHER GABEL,<br><br>      Plaintiffs,<br><br>v.<br><br>THE FAY LAW GROUP, P.A., CARAGH FAY, and THOMAS FORTUNE FAY,<br><br>      Defendants. | Case No. 4:23-cv-3139 |

## <u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

Pursuant to Federal Rule of Civil Procedure 56, Defendants Fay Law Group, PA, Caragh Fay, and Thomas Fay ("Defendants" or "Fay Law Group") move for summary judgment on the claim of tortious interference with contract asserted by Plaintiffs Brandon Roy ("Roy"), Christopher Gabel ("Gabel"), and Roy & Gabel PLLC (together with "Roy" and "Gabel," the "Plaintiffs").

# **TABLE OF CONTENTS**

Table of Authorities ........................................................................................................ ii

Nature and Stage of the Proceeding.............................................................................. 1

Issues Presented ............................................................................................................. 1

Summary of the Argument............................................................................................. 2

Statement of Undisputed Material Facts ...................................................................... 3

    I.    Fay Law Group and Roy & Gabel enter into a Joint Counsel Agreement to
        represent Beirut Bombing victims. ................................................................. 3

    II.    Roy & Gabel fails to discharge its responsibilities under the parties joint counsel
        arrangement.......................................................................................................... 5

    III.   Fay Law Group is forced to terminate the Joint Counsel Agreement............................ 7

Argument ........................................................................................................................ 8

    I.    There is no contract with which Defendants could have interfered............................... 9

        A.   Defendants cannot interfere with their own contracts........................................... 9

            1.   Defendants are parties to the Joint Counsel Agreement. ................................ 9

            2.   Defendants are parties to the joint retention letters......................................... 9

        B.   Roy & Gabel's prior retention letters were superseded. ....................................... 11

Conclusion ..................................................................................................................... 14

Certificate of Service ................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Allen Drilling Acq. Co. v. Crimson Expl. Inc.*,
    558 S.W.3d 761 (Tex. App.—Waco 2018, pet. denied) ...................................................11, 13

*Blondell v. Littlepage*,
    991 A.2d 80 (Md. 2010) .....................................................................................................9, 10

*City of Denton v. Mun. Admin. Servs., Inc.*,
    59 S.W.3d 764 (Tex. App.—Fort Worth 2001, no pet.) .........................................................13

*Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*,
    525 S.W.3d 671 (Tex. 2017) ....................................................................................8, 9, 10, 11

*Dow Chem. Co. v. Buchanan Hauling & Rigging, Inc.*,
    No. 4:21-cv-2604, 2022 WL 17406392 (S.D. Tex. Nov. 7, 2022) .........................................13

*Grissom v. Watson*,
    704 S.W.2d 325 (Tex. 1986) ....................................................................................................9

*Hardison v. Beard*,
    430 S.W.2d 53 (Tex. Civ. App.—Dallas 1968, writ ref'd n.r.e.) ............................................13

*Holloway v. Skinner*,
    898 S.W.2d 793 (Tex. 1995) .................................................................................................2, 9

*Hussong v. Schwan's Sales Enterp., Inc.*,
    896 S.W.2d 320 (Tex. App.—Houston [1st Dist.] 1995, no writ) ..........................................10

*IP Petroleum Co., Inc. v. Wevanco Energy, LLC*,
    116 S.W.3d 888 (Tex. App.—Houston [1st Dist.] 2003, no pet.) ..........................................12

*Laredo Indep. Sch. Dist. v. Trevino*,
    25 S.W.3d 263 (Tex. App.—San Antonio 2000, pet. denied) ................................................13

*Leon Ltd. v. Albuquerque Commons P'ship*,
    862 S.W.2d 693 (Tex. App.—El Paso 1993, no writ) ............................................2, 11, 13, 14

*Little v. Liquid Air Corp.*,
    37 F.3d 1069 (5th Cir. 1994) ...................................................................................................2

*Maxim Crane Works, LP v. Zurich Am. Ins. Co.*,
    11 F.4th 345 (5th Cir. 2021) ....................................................................................................2

*Nevarez Law Firm, PC v. Investor Land Servs., LLC*,
    645 S.W.3d 870 (Tex. App.-El Paso 2022 no pet.) ..........................................................11, 12

*Estate of Terry Hudson v. Islamic Republic of Iran*,
    ECF 1, No. 1:19-cv-377 (D.D.C.).............................................................................................4

*Travelers Indem. Co. v. Merling*,
    605 A.2d 83 (Md. 1992) ......................................................................................10

*Willeke v. Bailey*,
    189 S.W.2d 477 (Tex. 1945)...................................................................11, 12, 13

**Rules**

Fed. R. Civ. P. 56(a) ............................................................................................2

## NATURE AND STAGE OF THE PROCEEDING

This action arises out of a former arrangement between Roy and Gabel and Fay Law Group to represent United States servicemen and women and their families in litigation against the Islamic Republic of Iran relating to the bombing of the United States Marines' barracks in Beirut, Lebanon in October 1983. After Fay Law Group terminated that joint arrangement, Roy and Gabel asserted claims for breach of contract, tortious interference with contract, and sought declaratory judgment. [ECF 8]. The Court dismissed the claim for breach of contract and declaratory judgment action for lack of personal jurisdiction. [ECF 22]. Fay Law Group now moves for summary judgment on the remaining tortious interference claim.

## ISSUES PRESENTED

I.A    Black letter law holds that a party cannot tortiously interfere with its own contract. If Plaintiffs' claim for tortious interference with contract is based on agreements to which Fay Law Group is a party (the Joint Counsel Agreement or the Joint Retention Agreements), whether the claim is barred as a matter of law.

I.B    A later-signed agreement supersedes an old agreement covering the same subject matter where the terms of the two agreements are so inconsistent that they cannot coexist. If Plaintiffs' claim for tortious interference with contract is predicated on old retention letters Roy and Gabel signed with clients before entering the later-signed Joint Retention Agreements, whether the claim fails as a matter of law because the Joint Retention Agreements, which provided materially different terms than the old retention letters, superseded the prior letters.

The standard of review for each issue is the general standard that applies to motions for summary judgment. A court should grant summary judgment "if the movant shows that there is

1

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Fifth Circuit explains that "summary judgment is appropriate" where "the only issues before the court are pure questions of law." *Maxim Crane Works, LP v. Zurich Am. Ins. Co.*, 11 F.4th 345, 350 (5th Cir. 2021). As the party opposing summary judgment, Plaintiff "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*).

## SUMMARY OF THE ARGUMENT

The only claim left in this lawsuit is Plaintiffs' claim for tortious interference with contract. That claim fails as a matter of law for one basic reason: there is no contract with which Faw Law Group could interfere. Plaintiffs' complaint alleges that Fay Law Group interfered either with the Joint Counsel Agreement, the Joint Retention Agreements that both Fay Law Group and Plaintiffs signed with their clients, or with the retention letters Roy & Gabel signed with its clients before entering into the joint representation.

If Plaintiffs relies on the Joint Counsel Agreement or the Joint Retention Agreements, the claim fails because Faw Law Group is a party to those contracts, and a party cannot tortiously interfere with its own contract as a matter of law. *See Holloway v. Skinner*, 898 S.W.2d 793, 795 (Tex. 1995) ("[T]he person who induces the breach cannot be a contracting party."). And if Plaintiffs rely on the prior retention letters, those agreements were superseded when Roy and Gabel entered new joint retention letters because the two retention letters, covering the same subject matter, include fee provisions that cannot coexist. *See Leon Ltd. v. Albuquerque Commons P'ship*, 862 S.W.2d 693, 700 (Tex. App.—El Paso 1993, no writ) ("If the terms of the second agreement are so inconsistent with those of the first agreement that both cannot stand, the second is

2

conclusively presumed to have superseded the first."). No matter how one slices it, well-established law forecloses Plaintiffs' tortious interference claim.

<u>**STATEMENT OF UNDISPUTED MATERIAL FACTS**</u>

I.     **Fay Law Group and Roy and Gabel enter into a Joint Counsel Agreement to represent Beirut Bombing victims.**

1.     Fay Law Group has experience prosecuting claims against Iran on behalf of victims of the Beirut Bombing. Ex. A ¶ 2. Fay Law Group has practiced in this field over the last twenty years. [ECF 8 ¶¶ 18–20]; [ECF 25 ¶¶ 18–20].

2.     Prior to July 2017, Roy and Gabel purportedly assisted to retain over 200 clients for the purpose of asserting claims arising out of the Beirut Bombing. [ECF 8 ¶¶ 15–17]; Ex. A ¶ 4. Roy and Gabel signed retention letters with those clients. *See, e.g.*, Ex. B. As compensation for Roy and Gabel, the letters provided that the clients would covey "a forty percent interest (40%) in the case." *Id.* § 2.

3.     In or around the summer of 2017, Roy and Gabel contacted Fay Law Group to discuss the litigation of Beirut Bombing claims. [ECF 8 ¶ 21]; Ex. A ¶ 4. Representatives from Roy and Gabel and Fay Law Group met at Fay Law Group's offices in Maryland in July of 2017 to discuss the possibility of a joint counsel arrangement to litigate claims on behalf of Roy and Gabel's clients, which would become "joint clients" under any arrangement. *Id.* Eventually, the parties agreed to split the work, the expenses, and any attorney's fees recovered from prosecuting the joint clients' claims. *Id.* The parties then signed a "Joint Counsel Agreement." Ex. C. The parties to that agreement were Caragh Fay, Thomas Fay, Brandon Roy, Christopher Gabel, and the parties' law firms. *Id.*

4.     Prior to Roy and Gabel's outreach to Fay Law Group, Fay Law Group had retained approximately 250 clients and was planning to file a lawsuit asserting claims against Iran arising

out of the Beirut Bombing on those clients' behalf. Roy and Gabel were not involved in identifying and retaining these clients, and those clients have never had a contractual relationship with Roy and Gabel. These clients did not sign retention agreements with Roy and Gabel and are not the subject of this litigation. *See* Ex. A ¶ 3.

5.     In furtherance of the joint counsel arrangement, the joint clients recruited by Roy and Gabel signed new retention agreements (the "Joint Retention Agreements"). *See, e.g.*, Ex. D. As distinguished from Roy and Gabel's original agreements, the Joint Retention Agreements provided that the joint clients would promise jointly to pay Fay Law Group and Roy and Gabel 33.3% of any recovery as attorney's fees. *Id.* at ROY&GABEL-047170. The agreements were signed by Christopher Gabel and Brandon Roy on behalf of their individual law firms, and by Caragh Fay and Steven Perles on behalf of Fay & Perles, FSIA Litigation Partners. *Id.* at -047171; *see also* Ex. A ¶ 5.

6.     On February 13, 2019, Fay Law Group filed a complaint in the United States District Court for the District of Columbia. *Estate of Terry Hudson v. Islamic Republic of Iran*, ECF 1, No. 1:19-cv-377 (D.D.C.). Fay Law Group litigated the *Hudson* case as an agent of Fay & Perles. Ex. A ¶ 5. It is the party described in the Joint Counsel Agreement with Roy and Gabel, Ex. C, and is the law firm named on the pleadings. *See, e.g.*, *Hudson*, ECF 1 at 181, No. 1:19-cv-377 (D.D.C. Feb. 13, 2019). Fay Law Group serves as the principal place of business of Fay & Perles, and the Fay Law Group and Perles's law firm share evenly in the proceeds from all Beirut Bombing cases. Ex. E (partnership agreement); Ex. F at ¶ 2 (amended agreement). The principals of Fay & Perles FSIA Litigation Partners are Thomas Fay, Caragh Fay and Steve Perles. *Id.*

## II.    Roy and Gabel fail to discharge their responsibilities under the parties' joint counsel arrangement.

7.    One of the important tasks in prosecuting Beirut Bombing claims is obtaining client affidavits and taking client depositions to substantiate a client's eligibility for recovery under the Foreign Sovereign Immunities Act and the amount of damages. Fay Law Group and Roy and Gabel agreed to share, among other things, the tremendous burden and expense of obtaining hundreds of client affidavits and taking hundreds of client depositions. Ex. A ¶ 4.

8.    Roy and Gabel failed to meaningfully participate in the joint counsel arrangement. For instance, Roy and Gabel failed to take any client depositions. Ex. A ¶ 6. As late as January 2020, Donny Knepper, an attorney brought on to assist with taking client depositions, wrote to Caragh Fay to recommend bringing Roy and Gabel to Fay's office in Washington, D.C. to discuss the future of the joint counsel arrangement:

> We need to schedule a day for [Roy and Gabel] to come to DC. They are not doing anything. I still do not have a complete set of retainers. Back in November I provided them with a list of all of the retainers that I had; and a list of the retainers that were missing. Brandon told me back in November that his staff had located most of the missing retainers, but he never provided a list of those that he had found, nor did he produce copies of the actual retainers. As far as I know, they have not scheduled a single deposition. . . . **They are a liability**.

Ex. G at FAYLAWGROUP_0008361 (emphasis added).

9.    Similarly, Dan Gaskill, an attorney with experience in Beirut Bombing cases who was assisting the Fay Law Group, emailed Roy and Gabel:

> We are wrapping up our final Depositions and Affidavits. Once our Affidavits are completed (hopefully within the next two weeks) we will file for the Default Judgment. If we do not have an Affidavit and Deposition for a client at that time, they will be dismissed from the lawsuit. I imagine that this will infuriate the clients that get dropped - but this has been going on too long and we are moving the case forward. Please tell me that you only have a couple left to do. The Bar Complaint(s) would be massive. Is Gable still in the picture? I really don't understand why the R&G cases seem to be FUBAR, except for the work that I have seen Donny and Susan have done. Brandon, I'm not trying to be obnoxious here, but you have to agree that this is beyond ridiculous.

Ex. H at KNEPPER_0002474; *see also* Ex. A ¶ 6.

10.    Despite these and other pleas, Roy and Gabel did not improve their performance. Roy and Gabel's failure to contribute to the joint representation was not its only offense. More egregious was their complete failure to communicate with clients (a clear dereliction of their ethical duties) or with the Fay Law Group. Ex. A ¶ 6.

11.    For years, Fay Law Group received countless phone calls and emails from clients, complaining that they were unable to contact Roy and Gabel. *See, e.g.*, Ex. I at KNEPPER-0002824 ("Mr. Knepper, I am forwarding this email to you as validation of my interaction with Gabel Law. This was before it seemed they fell off the face of the earth."); Ex. J at FAYLAWGROUP_0008360 ("I have been dealing with Chris Gabel on another issue and just had to release him and find new counsel. To put it mildly it appears he has become totally dysfunctional. I would like no further dealings with him on this suit."). Given these failures, Roy and Gabel was warned that Faw Law Group was considering ending the joint counsel arrangement. *See* Ex. K at KNEPPER-0002776 ("Brandon: Chris Gabel called me this morning. He spoke with Dan Gaskill last night. Dan told him that the Fay Group is considering cutting the Roy/Gabel attorneys from the case due to lack of involvement from Brandon Roy and Chris Gabel.").

12.    Roy and Gabel also stopped responding to Fay Law Group's calls and messages, without explanation. Ex. A ¶ 6. Fay Law Group's administrative staff attempted to contact Roy and Gabel many times, with no success:

> Hi Estefania and Chris, I'm trying to reach your office, but it seems none of the phone numbers listed on the last email I received from Estefania are valid. Chris— I also tried calling the mobile number you'd pre[v]iously provided, but there was no voicemail. Additionally, we've been receiving calls from some of the clients who signed up with you saying they haven't heard from your office and mail they've tried to send is being returned as not deliverable. A google search is pulling up an address in Sugar Land, TX, but we were never notified that your office had

moved; additionally, the Gabel Law website is now inactive. Please provide your current contact information as soon as possible so we can communicate effectively.

Ex. L at FAYLAWGROUP-0007907.

13.     Several issues seem to have contributed to Roy and Gabel's years-long radio silence, including the fact that they dissolved their law firm, Roy & Gabel PLLC. The law firm failed to pay its franchise taxes and forfeited its charter on February 28, 2020. Ex. M; *see also* Ex. N (12.20.2018 Email from C. Gabel) ("[W]e shut down R&G."). Roy and Gabel then opened their own law firm, Roy & Associates, PLLC and Gabel Law, PLLC, respectively. This raised questions about whether Roy or Gabel continued to retain their clients. *Id.* (12.20.2018 Email from M. Knox) ("Um . . . did you know about this? If they aren't a partnership anymore, which clients are his and which ones are Brandon? And how do you want to portray this to the clients?").

14.     Finally, Roy and Gabel failed to share any of the expenses paid by Fay Law Group. As of September 15, 2022, Fay Law Group had incurred $543,084.16 in fees and costs. *See* Ex. O at FAYLAWGROUP-0007407–53; *see also* Ex. A ¶ 6.

**III.    Fay Law Group is forced to terminate the Joint Counsel Agreement.**

15.     Fay Law Group terminated the Joint Counsel Agreement, for several reasons, including Roy and Gabel's failure to participate meaningfully in the *Hudson* case. Ex. A ¶ 7. The decision was ethically in the *Hudson* clients' best interest given that Roy and Gabel's actions impeded the case's prosecution. Fay Law Group informed Roy and Gabel of the termination in a letter dated September 15, 2022. Ex. O at FAYLAWGROUP-0007403 ("We signed a Joint Counsel Agreement on the cases you provided in the Hudson matter where we split half the work, half the fees and half the costs. You have not provided any legal representation to these clients in this case. . . . I am cancelling our Joint Counsel Agreement due to your inability to perform.").

16.    Fay Law Group sent a letter informing the clients of this development. Ex. P. The letter explained that Fay Law Group had "paid all the expenses involved in prosecuting your case." *Id.* at FAYLAWGROUP-0007406. It further explained that Fay Law Group had terminated the Joint Counsel Agreement "due to Roy and Gabel's failure to prosecute and represent your claims." *Id.* And importantly, the letter informed the clients of their right to choose their legal representation: They could continue to work with Roy and Gabel or they could sign a new retainer with just the Fay Law Group. *See id.* ("You do not have to sign the retainer but you need new representation should you choose to not sign the retainer. If you choose to sign a new retainer with Roy and Gabel, then we suggest you contact them. Under the ethical rules this decision is completely your decision."); *see also* Ex. A ¶ 7.

17.    Since then, Fay Law Group diligently has prosecuted the claims on behalf of the *Hudson* clients, and continued to incur further expenses, costs, and fees. The *Hudson* case remains pending. The district court has appointed a special master to evaluate the amount of the claimants' damages. The parties are now waiting for the special master's report. Ex. A ¶ 8.

## ARGUMENT

Defendants are entitled to judgment as a matter of law on Plaintiffs' claim for tortious interference with contract for one simple reason: a party cannot be liable for tortious interference with its own contract. Fay Law Group is a party to the only two agreements that could possibly support a claim for tortious interference: the Joint Counsel Agreement and the joint retention letters. And to the extent that Roy and Gabel contend that Fay Law Group interfered with Roy and Gabel's prior retention letters, those letters were superseded when Roy and Gabel entered new, joint retention letters with the joint clients that included the Fay Law Group.

I.      **There is no contract with which Defendants could have interfered.**

Plaintiffs identify three agreements that could form the basis of their claim for tortious interference with contract: (1) the Joint Counsel Agreement; (2) the Joint Retention Agreements; and (3) the old Roy and Gabel retention letters. If the claim is based on (1) or (2), it fails because Defendants are parties to those agreements, and a person cannot tortiously interfere with her own contract. If the claim is based on (3), it must fail because the old retention letters, which provide for a materially different attorney fee, were superseded by the subsequent, joint retention letters.

A.      **Defendants cannot interfere with their own contracts.**

It is a basic principle of tort law that "a party must be a stranger to a contract to be subject to a tortious interference claim—that is, a party to a contract cannot tortiously interfere with its own contract." *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 690 (Tex. 2017). If the rule were otherwise, it "would convert every breach of contract claim into a tort claim." *Holloway v. Skinner*, 898 S.W.2d 793, 795 (Tex. 1995).

1.      **Defendants are parties to the Joint Counsel Agreement.**

Plaintiffs cannot maintain an action for tortious interference with the Joint Counsel Agreement because Defendants are parties to that agreement. The agreement clearly is signed by Caragh Fay and Thomas Fay, both of whom signed on their own behalf and on behalf of Fay Law Group. Ex. C. Because they are parties to the Joint Counsel Agreement, none of the defendants are "legally capable of tortious interference." *Cmty. Health Sys. Prof'l Servs.*, 525 S.W.3d at 690.

2.      **Defendants are parties to the joint retention letters.**

Plaintiffs likewise cannot maintain an action for tortious interference with the joint retention letters because each of the Defendants is either a party to those agreements or otherwise not a "stranger" to them. *Cmty. Health Sys. Prof'l Servs.*, 525 S.W.3d at 690. Caragh Fay is named

as a party to the joint retention letters. Ex. F. And Thomas Fay is a party to the joint retention

letters by virtue of his being a principal of Fay & Perles. SUMF ¶¶ 5–6. So Plaintiffs cannot

maintain an action against either of those defendants.

Nor can Plaintiffs maintain an action against Fay Law Group, PA because the law firm is

no "stranger" to the joint retention letters because Fay Law Group is Fay & Perles's agent. SUMF

¶¶ 5–6. The Supreme Court of Texas has explained that "a corporation's agent cannot tortiously

interfere with the corporation's contract," except in limited circumstances not relevant here. *Cmty.*

*Health Sys. Prof'l Servs.*, 525 S.W.3d at 690 (citing *Holloway*, 898 S.W.2d at 794). And to

establish agency, a defendant need only show "the purported agent's consent to act on the

principal's behalf and subject to the principal's control, together with the purported principal's

authorization for the agent to act on his behalf." *Id.* (citing *Grissom v. Watson*, 704 S.W.2d 325,

326 (Tex. 1986)). Fay Law Group meets that definition. Fay Law Group litigated the *Hudson* case

on Fay & Perles's behalf, with Fay & Perles's knowing consent, and for the parties' mutual benefit.

SUMF ¶¶ 5–6. There is therefore no dispute that Fay Law Group is Fay & Perles's agent.

As a result, Fay Law Group cannot have tortiously interfered with the joint retention letters

to which Fay & Perles is a party. Texas courts have explained that the main reason why an agent

cannot be held liable for tortious interference with its principal's contract is that "both [entities]

have the same financial interest." *Hussong v. Schwan's Sales Enterp., Inc.*, 896 S.W.2d 320, 327

(Tex. App.—Houston [1st Dist.] 1995, no writ). That is the case here. Both Fay Law Group and

Fay & Perles stood to benefit by Fay Law Group's litigation of the *Hudson* case through the

recovery of a shared attorney's fee, so Fay Law Group is not legally capable of interfering with

the joint retention letters.

The facts of this case are strikingly similar to the dispute between two lawyers in *Blondell v. Littlepage*, 991 A.2d 80 (Md. 2010).[1] There, in exchange for a 50-50 share of any attorney's fees, Blondell referred a case to Littlepage. Littlepage settled the case but did so for less than the client expected. This lower value, Littlepage explained, was due in part because defendants had a valid statute-of-limitations defense. She suggested that the client may have a malpractice claim against Blondell for failure to file the lawsuit before the deadline. This suggestion led Blondell to sue Littlepage for tortious interference, arguing that the Littlepage's statements had "poisoned" his relationship with the client. *Id.* at 83–88. The court rejected Blondell's tortious interference claim "under well-established principles," that Littlepage "could not intentionally interfere with a contractual or economic relationship to which she was a party." *Id.* at 98. The result should be the same here. Roy and Gabel and Fay Law Group are both parties to the joint retention letters. Under well-established principles of tort law, Fay Law Group could not intentionally interference with retention letters to which it was a party.

Insofar as the claim for tortious interference with contract is predicated either on the Joint Counsel Agreement or the Joint Retention Agreements, the claim fails as a matter of law because each of the defendants are either parties to those agreements or not a "stranger" to them as required by Texas law. *Cmty. Health Sys. Prof'l Servs.*, 525 S.W.3d at 690.

**B.    Roy and Gabel's prior retention letters were superseded and cannot support a tortious interference claim.**

Plaintiffs also appear to predicate their tortious interference claim on the retention letters they signed with clients before entering  the new, joint retention letters that included Fay Law Group. That theory fails because the joint retention letters superseded the old retention letters by

---

[1] Texas and Maryland law are both informative on these issues because they contain the same essential elements. *Compare Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 690 (Tex. 2017), *with Travelers Indem. Co. v. Merling*, 605 A.2d 83, 89 (Md. 1992).

operation of law. As such, the prior retention letters were not in effect and Defendants could not have interfered with them.

Under Texas law, and in general, a subsequent contract supersedes an earlier contract of the same subject matter where the subsequent contract's terms are "inconsistent with those of the other" contract, such that "the two cannot subsist together." *Allen Drilling Acq. Co. v. Crimson Expl. Inc.*, 558 S.W.3d 761, 772–73 (Tex. App.—Waco 2018, pet. denied) (quoting *Willeke v. Bailey*, 189 S.W.2d 477, 479 (Tex. 1945)); *Leon Ltd. v. Albuquerque Commons P'ship*, 862 S.W.2d 693, 700 (Tex. App.—El Paso 1993) ("If the terms of the second agreement are so inconsistent with those of the first agreement that both cannot stand, the second is conclusively presumed to have superseded the first.").

This well-established principle applies here, too. Indeed, courts have held in cases involving retention agreements that a subsequent retention agreement with a different fee term than the original retention agreement supersedes the original agreement. For example, in *Nevarez Law Firm, PC v. Investor Land Servs., LLC*, a law firm and client entered into a retention agreement whereby the law firm would bill for services on an hourly basis. 645 S.W.3d 870 (Tex. App.—El Paso 2022 no pet.). After a disagreement arose concerning large invoices, the client and law firm entered into a new retention agreement with a different fee term, whereby the client was obligated only to pay 50% of the fees until the approval of a settlement agreement. When the case settled, the client paid the firm 50% of the fees billed as negotiated under the new retention agreement. The law firm sued seeking payment under the original retention agreement, but that was a losing effort. The court held that the original agreement was superseded because the new agreement contained a different fee term, and was therefore inconsistent with the original agreement. *Id.* at 874–75, 880.

Here, the original Roy and Gabel retention letters and Joint Retention Agreements "cannot subsist together" because they are made between different law firms and contain materially different attorney's fees provisions. *Willeke*, 189 S.W.2d at 479. Under the former, the clients were obligated to pay Roy and Gabel 40% of any recovery. SUMF ¶ 2; Ex. B. But under the latter, the clients were obligated jointly to pay Fay Law Group and Roy and Gabel 33.3% of any recovery as attorney's fees. SUMF ¶ 5; Ex. F. Because the two contracts contain "inconsistent . . . obligations" regarding the same subject matter, they cannot both be in effect. *IP Petroleum Co., Inc. v. Wevanco Energy, LLC*, 116 S.W.3d 888, 899 (Tex. App.—Houston [1st Dist.] 2003, no pet.).

If both contracts somehow were in effect (and they are not), it would flagrantly violate ethical rules limiting the amount of fees attorneys are permitted to seek from their clients. Texas Rule of Disciplinary Professional Conduct 1.04(a) and D.C. Rule of Professional Conduct 1.5 require that a lawyer's fee be "reasonable." Generally, states have found that contingency fee arrangements are reasonable if they provide for no more than 33.3%–40% of the recovery as attorney's fees. *See, e.g.*, *City of Denton v. Mun. Admin. Servs., Inc.*, 59 S.W.3d 764, 769–70 (Tex. App.—Fort Worth 2001, no pet.) (50% contingency fee was unreasonable); *Laredo Indep. Sch. Dist. v. Trevino*, 25 S.W.3d 263, 266 (Tex. App.—San Antonio 2000, pet. denied) (40% contingency fee was reasonable). Here, if the old retention letters and Joint Retention Letters were in effect, the joint clients would be obligated to pay, at best, **56.65%** of their recovery as attorney's fees; 40% from the original letter paid to Roy and Gabel and 16.65% (half of the 33.3% fee) from the subsequent letter paid to Fay Law Group. And at worst, the joint clients would be on the hook for **73.3%** of their recovery; 40% from the original retention letter plus 33.3% from the subsequent retention letter. Either way, if the original retention letter and subsequent retention letter are both in effect, the arrangement would provide for a fee award far in excess of reasonable limits.

13

Fortunately, only one retention letter is in effect: the Joint Retention Agreements. The subsequent letter is later in time than the original letter, concerns precisely the same subject matter (litigation of the joint clients' claims against Iran), and contains materially inconsistent obligations. Accordingly, the subsequent letter "is conclusively presumed to have superseded" the original letter. *Leon*, 862 S.W.2d at 700; *see also Allen Drilling*, 558 S.W.3d at 772–73; *Willeke*, 189 S.W.2d at 479.

As binding precedent holds, when a party into a contract that is inconsistent with a prior contract of the same subject matter, the first contract is superseded by operation of law. *Leon*, 862 S.W.2d at 700.  As a result, it doesn't matter that the joint retention letters do not contain a merger clause, explicitly superseding the prior letter. *See Hardison v. Beard*, 430 S.W.2d 53, 56 (Tex. Civ. App.—Dallas 1968, writ ref'd n.r.e.) ("It is not necessary for the new contract to provide expressly for the extinguishment of the old obligation."); *see also Dow Chem. Co. v. Buchanan Hauling & Rigging, Inc.*, No. 4:21-cv-2604, 2022 WL 17406392, at *4 (S.D. Tex. Nov. 7, 2022) ("[I]t is not always necessary for a later contract to contain an integration clause in order for this later contract to supersede an earlier contract.").

Fay Law Group is entitled to judgment as a matter of law on Plaintiffs' claim for tortious interference under well-established legal principles. Fay Law Group cannot interfere with its own contracts, nor can it interfere with a superseded contract. Plaintiffs' tortious interference claim should be dismissed.

<u>**CONCLUSION**</u>

For the reasons stated herein, Defendants respectfully request that the Court grant their motion for summary judgment and enter judgment that Plaintiffs take nothing on their claim for tortious interference with contract. Defendants further request any relief that the Court in its discretion may deem equitable or just.

14

Dated: November 15, 2024                    GIBSON, DUNN & CRUTCHER LLP

                                                    By:    */s/ Sydney A. Scott*
                                                            Sydney A. Scott
     SBN: 24088379
     Kylie Calabrese
     SBN: 24120738
     Jack B. DiSorbo
     SBN: 24120804
     811 Main Street, Suite 3000
     Houston, Texas 77002
     Tel.: (346) 718-6702
     Fax: (346) 718-6963
     SAScott@gibsondunn.com
     KCalabrese@gibsondunn.com
     JDiSorbo@gibsondunn.com

     Matthew D. McGill
     Admitted *Pro Hac Vice*
     1050 Connecticut Ave. N.W.
     Washington, DC 20036
     T: (202) 887-3680
     F: (202) 530-9662
     MMcGill@gibsondunn.com

     *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I certify that on November 15, 2024, a true and correct copy of the foregoing document was served by ECF and electronic mail on all counsel of record.

                                                    */s/ Sydney A. Scott*
                                                    Sydney A. Scott